# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

SHEILA RENEE BROWN,

    Plaintiff,

vs.

ANDREW M. SAUL[1],
Acting Commissioner of the Social Security
Administration,

    Defendant.

CAUSE NO. 3:18-CV-921-PPS

## OPINION AND ORDER

Sheila Brown mistakenly received roughly $8,900 from the Social Security Administration, promptly spent it and now says she has no obligation to pay it back. To that end, Brown, who represents herself, has filed a complaint against the Commissioner of Social Security seeking review of the agency's decision denying her request for waiver of an overpayment of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 404(b)(1). [Tr. 17-21.][2] Because I find that Brown was not without fault for the overpayment, the final decision of the Commissioner of Social Security denying Brown's request for waiver of overpayment is affirmed.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

**Background**

On September 1, 2014, the Social Security Administration advised Brown that she had been awarded social security income (SSI) benefits retroactive to October 2008. [Tr. 22.] The agency communicated in a letter that "[w]e will be in touch with you about your back payments." [Tr. 23.] On October 26, 2014, the agency notified Brown that she was also entitled to Title II benefits retroactive to March 2009. [Tr. 49.] The agency stated, "[w]e are withholding your Social Security benefits for March 2009 through September 2014. We may have to reduce these benefits if you received Supplemental Security Income (SSI) for this period." [Tr. 49.] The agency also explained it would withhold $4,627.25 from past-due benefits in case it needed to pay Brown's representative. [Tr. 50.]

A few weeks later, on November 17, December 9, and December 11, 2014, Brown visited her local field office for an explanation of the SSI offset of her benefits and the amount withheld for attorney fees. [Tr. 76, 79.] Notes in the record show that Brown "was very irrate and unruly with the staff" so a supervisor explained to her what her Title II retroactive payment would be once the SSI offset was applied to it. [Tr. 76, 79.] The notes from the Social Security administration state that "we wrote down what she was due from T2 retro, so she knew exactly what was coming to her." [*Id.*]

Unfortunately, the payment center did not properly apply the offset, and it released too much money to Brown in her Title II payment. [Tr. 57, 76.] According to Brown, she got a check for $13,881.75 on December 12, 2014. [Tr. 191.] The check sent

2

to Brown failed to apply the offset. [Tr. 54.] This mistake resulted in Brown being paid more in past benefits than in fact she was due.

The record in this case is confused by the fact that the Social Security Administration sent two letters to Brown dated December 17, 2014. In the first letter, the agency notified that she "[would] soon receive a check for $13,881.75," which, according to the letter, took into account the SSI offset. [Tr. 54.] Of course, this letter contained inaccurate information since the check for $13,881.75 mistakenly *failed* to apply the offset, and soon after that letter was drafted, someone must have realized the mistake. Later that same day on December 17, 2014, the agency notified Brown by a second letter that, "we paid you $8,904.00 too much in benefits." [Tr. 57.] The agency explained that, due to a systems error, the past-due benefits were paid without taking into consideration the SSI offset. [*Id.*] Therefore, the amount paid, $13,881.75, should have been reduced to $4,977.75. [*Id.*]. In other words, Brown had been overpaid in the amount of $8,903.50. [*Id.*] Brown claims she did not receive this second letter explaining the overpayment until either December 18, 2014, or closer to Christmas, on December 24, 2014. [Tr. 191.]

As is her right under the pertinent Social Security regulations, Brown requested waiver of the overpayment on January 29, 2015, arguing she was not at fault and could not afford to pay back the overpayment. [Tr. 64-71.] Brown says that she immediately spent the money on beds, clothing, and debts. [Tr. 192.]

3

On February 3, 2015, the agency advised Brown that it would begin withholding amounts from her monthly benefits to recover the overpayment. [Tr. 73.] But just a few days later, on February 9, 2015, the agency stopped withholding from her monthly benefits since Brown had filed a request for a waiver. [Tr. 75.] On February 20, 2015, Brown's waiver request was denied. [Tr. 79.] The agency individual determined that:

> Sheila Brown knew what her SSI offset and T2 retro amount would be, since we told her in the office and even wrote it down for her. For this reason, she should have contacted the office before spending all of the money. It is my determination that this waiver should be denied since Ms. Brown knew exactly what she was due for her [] retro payment.

[Tr. 80.] The agency determined that "we cannot waive the collection of this overpayment. This means that you must pay this money back." [Tr. 82.] Brown moved to reconsider this decision, and on May 21, 2015, her waiver request was again denied on reconsideration. [Tr. 87-88.]

On July 7, 2015, Brown requested a hearing before an ALJ. [Tr. 91.] The hearing was held before ALJ Michael Logan on March 24, 2017. [Tr. 173-92.] At the hearing, Brown did not dispute that she visited the Social Security office in November and December of 2014, but she did deny that she had ever been advised of the correct amount of the benefits that she would receive after the offset. [Tr. 184-92.] The ALJ did "not credit claimant's testimony" because "SSA personnel clearly advised claimant clearly of the correct amount she was to receive. Therefore, she knew she received an amount in excess of the amount due to her." [Tr. 20.] Because the ALJ found Brown was aware of the amount of money she was due after offset, she was not without fault

4

in accepting the miscalculated payment. [Tr. 21.] Therefore, the ALJ denied waiver of the overpayment, and found Brown liable for repayment of $8,903.50.

Currently, $20 a month is being withheld from Brown's benefits to repay the amount of the overpayment. [Tr. 189.]

## Discussion

Section 205(g) of the Social Security Act limits the scope of judicial review of the Commissioner's final decision by providing that "any fact, if supported by substantial evidence, shall be conclusive," and thus the court's power to modify, affirm, or reverse the decision of the Commission is restricted. 42 U.S.C. § 405(g). The Supreme Court has defined "substantial evidence" to include "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must affirm the denial of a request for waiver of repayment if substantial evidence supports the decision and the Commissioner has committed no error of law. *Schmoll v. Harris,* 636 F.2d 1146, 1149-50 (7th Cir.1980); *Strunk v. Heckler*, 732 F.2d 1357, 1359 (7th Cir. 1984). A district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the SSA." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Banuelos v. Apfel*, 165 F.3d 1166, 1169 (7th Cir. 1999) (overruled on other grounds).

Brown does not dispute that an overpayment was made. Section 204 of the Social Security Act, covers overpayments of Social Security Benefits:

(a) Procedure for adjustment or recovery

> (1) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security, as follows:
>
> (b)(1) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

42 U.S.C. § 404(a)-(b)(1). In other words, the agency may not recover an overpayment when the recipient is without fault and recovery would defeat the purpose of the Act or be against equity and good conscience. Brown bears the burden of demonstrating that she meets the elements of this two pronged test. *Banuelos*, 165 F.3d at 1170.

Here, the parties contest whether Brown can be considered "at fault" for the overpayment. First, let me note that just because the SSA was ultimately at fault in causing the overpayment does not relieve Brown of fault. 20 C.F.R. § 404.507. The fault inquiry revolves around the actions of the recipient (Brown), regardless of the SSA's role in causing the overpayment. 20 C.F.R. § 404.507; *Bonner v. Chater*, No. 94-3471, 1995 WL 272665, at *3 (7th Cir. May 9, 1995). So even though the agency made the overpayment of benefits, that error does not absolve Brown of any fault.

In determining fault, I may consider all evidence in the record; however, I should not decide the facts anew or reweigh the evidence, because the ALJ must resolve factual issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). Therefore, "the critical question for this Court is not whether Plaintiff is entitled to

waiver, nor the total amount of her overpayment, but whether there is substantial evidence in the record to support the Commissioner's findings on these issues." *Wilkening v. Barnhart*, No. 02 C 9096, 2004 WL 1005718, at *4 (N.D. Ill. Apr. 27, 2004).

There is substantial evidence supporting the ALJ's conclusion that Brown was not without fault. A person is at fault for an overpayment when she accepts a payment which "[s]he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507(c). In this case, the ALJ found that Brown had been advised by field office personnel what the correct amount of her Title II payment would be. There are agency notes in the record setting forth that Brown was in the office on November 17, December 9, and December 11, 2014, that she was upset and unruly with the staff, that a supervisor spoke to Brown, and explained the offset and wrote down what Brown was due from her retroactive benefits, so that she knew exactly what would be coming to her. [Tr. 76, 79.] Because notes from field office personnel document these conversations, this is substantial evidence in the record. Moreover, the ALJ logically articulated his reliance on these notes.

At the hearing, Brown specifically denied that the field office personnel advised her of what her correct payment amount would be. [Tr. 186-94.] However, the ALJ did not believe Brown's testimony. [Tr. 20.] The ALJ noted the contemporaneous records from the field office personnel that reflect the conversations really did take place, and that during them, Brown was advised of the correct payment amount. [Tr. 20-21, 76, 79.]

7

Thus, the ALJ put forth substantial evidentiary support to discredit Brown's narrative and credit the agency account over hers.

Brown contends the agency "has ruthlessly plotted against [her]" and "distorted the truth." [DE 20 at 5.] She claims it is the field office who is lying, not her. [*Id.* at 7.] But this is nothing more than a request that I re-weigh the evidence and find that her version of events is more credible than the documents by field office personnel. But that is not my task. I cannot decide the facts anew, re-weigh the evidence, or substitute my own judgment. *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000).

Finally, I note that *if* the individual is found to be without fault in causing the overpayment, the next issue to consider is whether recovery of the overpaid amount would "defeat the purpose of the Act" or "would be against equity and good conscience." 20 C.F.R. § 404.506; s*ee Banuelos*, 165 F.3d at 1169-73. But if the recipient was at fault in causing the overpayment, like in this case, the ALJ's inquiry is over. *Heins v. Shalala*, 22 F.3d 157, 162 n.2 (7th Cir. 1994). The ALJ need not proceed to the second element of the two-pronged test for waiver of overpayment (and he did not in this case), and because I find that substantial evidence supported the ALJ's decision of fault, I don't need to address this second factor either. *Id.*

## Conclusion

For the foregoing reasons, the court DENIES Brown's request to reverse the waiver and AFFIRMS the final decision of the Commissioner.

IT IS SO ORDERED.

8

ENTERED: September 16, 2019.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT